THE TOLLAND COUNTY MUTUAL FIRE INSURANCE COM-
PANY *vs.* EMILY C. UNDERWOOD AND OTHERS.

A testator made the following bequest to his wife:—"I give to my wife *C*
all the income of my estate, and so much of the principal as may be nec-
essary for her support and the maintenance and education of my five
daughters, during her natural life." The testator died two years later.
A part of the property bequeathed was real estate of the value of $3,400.
Eight years later the plaintiffs obtained a judgment against *C*, the widow,
for $418, and recorded a judgment lien upon the real estate, and now
sought to foreclose the lien. At this time the personal property had been
exhausted and nothing remained but the real estate, which yielded an in-
come of but $200. Two of the daughters were dead, one was married,
and two with the widow were dependent on the property for support.
Held :—

1. That the widow took a life estate only in the land.
2. That she took this estate in trust.
3. That her interest, being inseparable from that of the daughters, and all
   the property being needed for her and their support, could not be taken
   upon a judgment against her.

SUIT to foreclose a judgment lien; brought to the Su-
perior Court in Tolland County. The facts were found by
the court and the case reserved for advice. The case is
fully stated in the opinion.

*M. R. West* and *D. Marcy*, for the plaintiffs.

1. By the act of 1878 any real estate subject to an execu-
tion is subject to a judgment lien. The interest vested in
the judgment creditor by such a lien is as permanent as a
mortgage and of the same nature. *Beardsley* v. *Beecher*,
47 Conn., 408. And the lien may be foreclosed in the same
manner as mortgages. Sec. 5 of the act. *Goodman* v. *White*,
26 Conn., 317. It is of no consequence just what the inter-
est of the judgment debtor is, the court will foreclose it
without defining it. *Williams* v. *Robinson*, 16 Conn., 517;
*Wooden* v. *Haviland*, 18 id., 102; *Hill* v. *Meeker*, 23 id., 592.

2. Mrs. Underwood took a life estate in the land. *Larned*
v. *Bridge*, 17 Pick., 339. And under the provision with
regard to the use of the principal of the estate so far as

necessary, she took a fee in so much of the land as should be thus needed. Perry on Trusts, §§ 113, 114, 117, 119; *Gilbert* v. *Chapin*, 19 Conn., 342; *Harper* v. *Phelps*, 21 id., 257; *Kellogg* v. *Mix*, 37 id., 243; *Foose* v. *Whitmore*, 82 N. York, 405.

3. But if the court should regard a trust as created by the will, then Mrs. Underwood's interest could still be taken for her debts. Perry on Trusts, § 116; *Davenport* v. *Lacon*, 17 Conn., 278; *Johnson* v. *Connecticut Bank*, 21 id., 148; *Easterly* v. *Keney*, 36 id., 18; *Sparhawk* v. *Cloon*, 125 Mass., 263; *Daniels* v. *Eldredge*, id., 356; *Nichols* v. *Eaton*, 91 U. S. Reps., 716.

*C. Phelps*, contra.

CARPENTER, J. A testator by a will executed in 1870, gave property to his wife as follows :—" I give and bequeath to my beloved wife, Emily C. Underwood, all the rents, profits and income of my estate, both real and personal, and so much of the principal as may be necessary for her support and maintenance, and the support, maintenance and education of my daughters, Ellen J., Lizzie G., Ada J., Annie H., and Miriam L. Underwood, for and during the natural life of my said wife Emily C." The testator died in 1872. A part of the property bequeathed was real estate.

The plaintiff in 1880 recovered a judgment against the said Emily C. Underwood for $418.83, and filed a lien to secure the same, under the statute, upon the real estate devised to her. This suit is a proceeding to foreclose that lien. The Superior Court found the facts and reserved the case for the advice of this court. In the finding it appears that the personal property is practically exhausted and that the real estate remaining is now worth about $3,400. Of the daughters named two are dead, one is married, and two remain dependent for their support and education upon the property so given.

The first question is,—what estate did the widow take in the property? We think she took a life estate only. Such

appears to be the clear intention of the testator. It is given for life expressly. A life estate in express terms is not a fee simple in the lands remaining unsold. *Lewis* v. *Palmer*, 46 Conn., 454.

Did she take an estate in her own right, or in trust? In *Bristol* v. *Austin*, 40 Conn., 438, it was held that similar language, but identical in substance and meaning, raised a trust. A reference to that case and the authorities cited is all that is now necessary. The cases are not entirely harmonious, but the current of the authorities seems to be in that direction.

The next and principal question is,—did Mrs. Underwood take an attachable interest in the property? The general rule is that all one's property is liable for his debts. But to that rule there are many exceptions. All property exempt by statute from attachment is within the exception; so is ordinary trust property designed to secure a maintenance for some unfortunate debtor; so also the income of trust property where it is payable to the beneficiary at the discretion of the trustee. The exceptions indicate unmistakably that it is the policy of the law not to take from the debtor his means of subsistence—not to take from him his necessary daily food and clothing.

Now in this case the estate is small, barely sufficient to raise an annual income of two hundred dollars, out of which, except as the principal may be resorted to for that purpose, three persons are to be supported. While a court of equity will lend its aid to appropriate the surplus of trust funds, after affording a reasonable support to the *cestui que trust*, to the payment of his debts, yet we apprehend that it will not interfere to deprive a widow of a pittance, confessedly too small for her support, left by her husband for that purpose. In *Genet* v. *Beekman*, 45 Barb., 382, the marginal note is : "It is only in cases where a clear surplus will exist, after a reasonable sum has been appropriated to the support of the person for whose benefit a trust was created, that courts of equity are authorized to interfere in behalf of judgment creditors, and divert a portion of the

income or annuity to the payment of the debts of such person."

Again: the interest of this mother, even if it was capable of separation, could not be separated from the interests of the daughters and transferred to creditors without seriously interfering with or entirely defeating the purposes of the trust. The supposed justice to creditors may and probably would work grievous injustice to third persons; and when such will be the result it requires no argument to show that a court ought not to interfere. But the interest of the widow is inseparable from that of the daughters. The income is small—clearly insufficient for their comfortable support—and some portion of the principal, how much the court was unable to find—will be required for that purpose. It is equally impossible to tell how much will hereafter be required for the support of the widow alone, or either of the daughters. Any one of the beneficiaries may at any time be in a situation to require the whole income. Under these circumstances it is impossible to fix upon any definite portion of the income and say that that shall be appropriated to the payment of the widow's debts. We are therefore disposed to approve the principle enunciated in *Ontario Bank* v. *Root*, 3 Paige, 482, so far at least as to apply it to a case in which the trust fund is as small as it is in the present case, that "the interest of a judgment debtor in a trust created partly for his benefit and partly for the benefit of another, cannot be taken on execution."

We advise judgment for the defendants.

In this opinion the other judges concurred.