# IRA H. HOUGHTON et al. *vs.* HARRY TIFFANY et als.

*Deeds of trust: spendthrift trusts; right of alienation; life tenant and remaindermen; proceedings to set aside mortgage and assignment of interest; parties; multifariousness.*

A deed of trust by which the grantor made provision for his wife and children, contained the following provision for his son, Harry Tiffany, to be held in trust that the trustee should manage the thereby granted property and collect and receive the rents, issues and income thereof, and, in his discretion, either pay such rents, etc., to the said Harry Tiffany, or apply the same for his use during his life, so that he should have no title to or control over said last named portion of the thereby granted property; and "from and after the death of the said Harry Tiffany, then in trust for his issue if he should leave any living at the time of his death, but if he should die without leaving issue, then in trust for the said Henry Tiffany (the grantee) and his heirs." Some years after the death of the testator, the life tenant and his daughter, the remaindermen, joined together in a mortgage and assignment of the interest, so conveyed by the deed of trust, together with the income therefrom; subsequently the life tenant and the remaindermen filed a petition in the Court in which the trust estate was being administered, in which they allege that the deed created a spendthrift trust in favor of the life tenant, which was inalienable; that the life tenant when he executed the said mortgage and assignment was crazed by poverty and drink and was not responsible for his acts; that the remaindermen by their joinder in the assignment thought they were uniting merely in the conveyance of the estate of the life tenant and that they had only learned within the six months last passed that their own interest had been thereby conveyed away; the petition also

alleged that of the amounts realized from the mortgage and assignment large sums had been retained as bonuses; and that the assignment was at most but an equitable mortgage; the petition prayed that the mortgage and assignment be vacated and annulled and the several parties thereunder remitted to their remedy at law, if any they had; that the trustee be directed to pay the income for the satisfaction of bills contracted for necessities for the life tenant and his family, and for general relief. It was *held* that: The petition was multifarious. The question as to the validity of the assignment should be raised by original bill and not by petition.　　　　　　　　　　　　　　　　　　　　　　　p. 667

The assignees of the estate, taking subject to the mortgage would not be affected by the setting aside of the mortgage and should not be required to defend the assignment in connection with the mortgagee.　　　　　　　　　　　　p. 666

The remaindermen were improperly joined and should have presented any grounds they had for setting aside the assignment by a separate bill.　　　　　　　　　　　　　　　p. 666

The deed of trust did not create a spendthrift trust; the clause "that he shall have no title to or control over said last portion of the said hereby granted property—" related to the corpus and not to the income of the property.　　　　p. 665

The deed gave to the trustee the discretion to pay over the income to those who advanced money to relieve the *cestui que trust* when he was without the means to obtain the necessities of life.　　　　　　　　　　　　　　　　　p. 664

The deed did not prohibit the alienation or anticipation of the income.　　　　　　　　　　　　　　　　　　pp. 664, 666

Where on an appeal from a Court of Equity about one-half of the record was unnecessary and not connected with the appeal, the Court of Appeals in reversing the order placed one-half of the cost of the record on the appellant and one-half on the appellee, including the cost of transmitting the record.　　　　　　　　　　　　　　　　　　　p. 667

*Decided December 6th, 1911.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*John R. M. Staum and W. W. Parker,* for the appellants.

*W. G. Gardiner and Frank Gosnell* (with whom was *W. L. Marbury* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order overruling a demurrer filed by Ira H. Houghton and Louis S. Houghton to a petition filed by Harry Tiffany *et al.* Henry Tiffany, the father of Harry Tiffany, conveyed to Robert M. McLane, by deed dated the 20th day of October, 1863, and recorded in Baltimore City, certain property *in trust* to collect and receive the rents, profits and income therefrom for the sole and separate use of his wife, Sally J. Tiffany, for life, and after her death *in trust* for their three children, Kate Tiffany, Harry Tiffany and Louis McLane Tiffany, to be equally divided between them, share and share alike.

The Court assumed jurisdiction of the trust, but Mr. McLane was, upon his own application, released and discharged from the further performance of his duties as trustee, and by a decree passed the 10th of April, 1886, the Mercantile Trust and Deposit Company of Baltimore was appointed trustee in his place.

The provisions made in the deed of trust for Harry Tiffany, involved in this case, are as follows: "and the share or portion of the said Harry Tiffany to be held by the said Robert M. McLane in trust, that he, the said trustee, shall manage that portion of said hereby granted property and collect and receive the rents, issues and income thereof, and shall, in his discretion, either pay such rents, issues and income to the said Harry Tiffany, or apply the same for his use during his life, so that he shall have no title to or control over said last named portion of the said hereby granted

property; and from and after the death of the said Harry Tiffany, then in trust for his issue if he shall leave issue living at the time of his death, but if he shall die without leaving such issue, then in trust for the said Henry Tiffany and his heirs."

This petition was filed in the trust case by Harry Tiffany and Sally J. Tiffany Stevens and Mary E. Tiffany, his two daughters, who would be entitled to the remainder if they survive their father. It alleges that the portion of the estate held in trust for Harry Tiffany for life, with remainder over, is valued at upwards of $30,000 and consists of bonds, which are described, four ground rents and $43.44 cash; that there are on record what purport to be three mortgages of the interest of the petitioners in said trust estate, as follows: one to Henry C. Shirley and W. W. Shirley, dated December 26th, 1905, for $9,000.00; one to Catherine S. Hill, dated September 22, 1906, for $2,000.00, and one to the Auxiliary Realty Co., dated March 5, 1907, for $5,000, and there is also what purports to be an assignment of their interest for an alleged consideration of $6,500.00 to Ira H. Houghton and Louis S. Houghton.

Two mortgages had been given to Mary L. McLaughlin before the Shirley mortgage was executed—one for $5,000 and the other for $1,700, but out of the money received from the Shirleys those two were paid off. When the first McLaughlin mortgage was given the petitioners executed an assignment to R. Bennett Darnall and John R. N. Staum of the income payable to Harry Tiffany by the trustee, to be applied first to the interest on the $5,000 mortgage, secondly to the payment of the annual premium on an insurance policy taken out for the benefit of Mary L. McLaughlin on the life of Mrs. Stevens, and the balance to be paid to Harry Tiffany.

On the 21st of April, 1904, Messrs. Darnall and Staum filed a petition in the trust case praying for the passage of an order directing the trustee to pay over to them the income. Service of a copy of the petition was admitted by counsel

for the trustee, and the same day the Court passed an order directing the trustee to pay over to them the income, in accordance with the assignment, until the further order of the Court.

When the Shirley mortgage was given, the petitioners executed an assignment to R. Bennett Darnall and Henry C. Shirley, Jr., of the income to be applied in part to the interest on the $9,000.00, and the petitioners also signed a petition, which was filed in Court on January 3rd, 1906, praying for an order directing the trustee to pay over the income to Messrs. Darnall and Shirley. Notice of the petition was admitted by counsel of trustee and the Court passed an order directing that upon release of the two McLaughlin mortgages the order of April 21st, 1904, be revoked, and the trustee was directed to pay the income over to Messrs. Darnall and Shirley until the further order of the Court. The Shirleys also took out life insurance policies on the lives of Mrs. Stevens and Miss Tiffany. An assignment was also made of a portion of the income and a life insurance policy was taken out for the benefit of Catherine S. Hill.

Then on April 10th, 1908, for an apparent consideration of $6,500.00 of which only $5,000.00 is alleged to have been paid Harry Tiffany, the petitioners signed an instrument purporting to convey their respective interests in said trust estate to the Houghtons, and a life insurance policy was also taken out for their benefit. R. Bennett Darnall on April 15th, 1908, assigned to W. W. Parker, agent of the Houghtons, all rights he had to collect the income which had passed to him under an assignment of December 26th, 1905.

The petition alleges that in each of the loans large sums were deducted as bonuses, etc. It charges that the assignment of the Houghtons, if at all effective against them, is only a mortgage and not an absolute conveyance; that when each and every one of the alleged mortgages and assignments purporting to affect the trust estate, and their interest therein and the income therefrom, were signed, the peti-

tioners were impoverished and not rsponsible for their acts, and Harry Tiffany was crazed with drink and not responsible for his acts, and hence the transactions are not binding upon them or either of them; that moreover the said deed of trust created a spend-thrift trust in favor of Harry Tiffany, and by no act of his could his interest in said trust estate or the income arising therefrom be in any manner encumbered or disposed of by him or diverted from the objects and purposes intended and declared by the grantor.

It further alleges that the trustee made no resistance to the passage of the orders referred to, although it had such knowledge as to put it upon its guard; that Harry Tiffany had received no income from the estate since early in 1908, and that the trustee claims to have paid it over to others until July 1st, 1910. It is also claimed that the Court had no power to pass the orders referred to above.

It is charged that if the deed did not create a spendthrift trust in the legal sense of the term, the purpose of the grantor was to protect Harry Tiffany from his own infirmities, and incidentally in doing so to protect his family against the condition of his yielding to those infirmities; that when Mrs. Stevens and Miss Tiffany signed the mortgages and assignments and consented to the life insurance policies upon their lives they understood and were led to believe that they were only acquiescing in the attempted incumbrance by Harry Tiffany of his life interest, and they did not know until six months last past that it was claimed by the mortgagees and assignees that their contingent remainders in said trust were affected.

It prays that the several mortgages and assignments be vacated and annulled, and that the several parties claiming thereunder be remitted to their remedy at law, if any they have; that the said orders of Court be declared inoperative and not binding; that the trustee be directed, until the further order of Court, to pay to Harry Tiffany or to apply all income received since the 1st of April, 1908, to the payment of outstanding bills contracted by him for house rent, grocery

and provision bills, and other necessaries for himself and family and for general relief.

We will first determine whether this deed created a spend-thrift trust. It was settled by *Smith* v. *Towers,* 69 Md. 77, that such a trust can be validly created in this State, and a number of decisions have since been rendered declaring the respective instruments to have or not to have that effect, depending mainly upon the language used in them. In *Smith* v. *Towers,* the testator devised real estate to the trustee to collect the rents and profits, and to pay them to a son, "into his own hands, and not into another, whether claiming by his authority or otherwise." That was held to be a spendthrift trust. In *Md. Grange Agency* v. *Lee,* 72 Md. 161, the trust was not only "for the support, maintenance, education and advancement in life" of the respective families of the trustees, who were sons of the testatrix, but the will provided that no part of the property devised should in any event be made liable for the debts or contracts of the children of the testatrix so as to be sold for the same, or in any manner diverted from the object and purpose of said trust. It was held that the rents and profits were exempt from liability for the son's debts as fully as the land itself. In *Baker* v. *Keiser,* 75 Md. 332, the share of the estate of the testator in question was left "in trust for the benefit of said Levina during her life, receiving her annual interest and income therefrom, the said share to be securely invested, as soon as declared, and after her death to be equally divided between her children." It was held that there was no restraint on the alienation of the income by the life tenant, and it was therefore subject to attachment by her creditors. It was there said: "This Court went as far as they could in the *Towers' case* to effect the intention of the testator which was so expressly declared; but proper adherence to the policy of the law in this State will not allow the extension of the doctrine of the *Towers' case* beyond the limitations of that decision, nor to a case not falling clearly within

its reasons and reasoning." In *Reid* v. *Safe Dep. and Trust
Co.*, 86 Md. 464, the property was in trust for the life
tenant and was not "to be taken in execution or attachment
or otherwise howsoever, and so that she shall not plead or
anticipate said property or said net proceeds of income, or
any part thereof." This Court said the terms of the will
were too explicit and clear to be misunderstood and that
"the income in the hands of the trustee was not liable to
attachment for the debts of the *cestui que trust.*" In *Jack-
son Square Association* v. *Bartlett*, 95 Md. 661, the direc-
tions of the testatrix were to pay the income to her son
George "as it shall accrue and not by way of anticipation
to my said son for the support of himself and his family,
the receipt of my said son to be a sufficient acquittance to
my said trustee therefor, but my will is that my said son
shall have no power to charge, encumber or anticipate the
said income." It was held that that was a spendthrift trust
and that the interest of the *cestui que trust* in the income was
not liable to attachment by his creditors.

In *Wenzel* v. *Powder*, 100 Md. 36, Moses Hindes Powder
in 1881 conveyed all his property to himself as trustee, in
trust to collect the rents, income, etc., "and apply the same
to the support and maintenance of the said Moses Hindes
Powder, and his wife and children, during the lives of the
said Moses Hindes Powder and his wife and after the death
of both of them the principal of said estate" to become the
absolute property of their children. The Safe Deposit and
Trust Company was substituted as trustee in 1883 and the
settlor died the next year. The appellees in this case referred
to the fact that the law did not permit an owner of property
to thus prevent it from being liable for his debts, and hence
they argued that that case could not be an authority in
favor of the appellants. But the decision was not based on
that fact, and as we have seen, the settlor was then dead and
the question was as to the interest of his daughter in the life
time of his wife. CHIEF JUDGE McSHERRY said: "Clearly,

as respects the settler himself neither the words above quoted nor any others could have protected the income from attachment and condemnation at the suit of his creditors. *Warner et al. v. Rice,* 66 Md. 436. And so it comes down to this: do the words 'support and maintenance,' the settlor being now dead, preclude the income from being alienated during the lifetime of the widow." He then went on to discuss the question and concluded that the deed did not create a spendthrift trust.

We have thus referred at some length to the principal cases in this State on the subject, and it can not be denied that in each of those in which a spendthrift trust was declared the language used much more clearly indicated an intention on the part of the testator or grantor to make the income inalienable than was done by this deed. It must not be forgotten in the first place that the trustee is required either to pay to Harry Tiffany or apply for his use *the whole,* and not merely a part of the rents, issues and income—the only discretion given the trustee being that he could either pay them over to Harry or apply them for his use. In *Wenzel* v. *Powder* the trustee was required to collect the rents, issues, income, profits and interest "and apply the same to the support and maintenance" of Powder and his wife and children, but this Court held that the deed did not create a spendthrift trust. JUDGE McSHERRY said: "The declaration that the trustee is to apply the income for their maintenance and support is simply the declaration of a general trust for their benefit. * * * The debt which the appellant seeks to recover was contracted by the beneficiaries for food, and, therefore, for articles used in their support and maintenance; and if the interest to accrue on the trust fund is applied to the payment of that debt it will be applied to the support and maintenance of the *cestui que trust.*"

The latter statement might with at least equal force be applied to this case, for even if the trustee had actively consented to the income being applied to the payment of bor-

rowed money, instead of simply submitting the question to the Court, it might very well be said that it was applied to the use of Harry Tiffany and that too not at his instance alone but by the active co-operation of his wife and the two remaindermen. The petition alleges that he and his family were without means to obtain the necessaries of life or pay the rent, and that he and his family were reduced to absolute want. Surely the grantor never intended that under such circumstances the trustee could not in his discretion pay over the income to those who advanced money to relieve his son and family from such a condition.

The case of *Thompson* v. *Ballard,* 70 Md. 10, reflects upon this question, although the Court was not determining whether a spendthrift trust had been created. The trust there was "that the said trustee shall appropriate and apply the net rents, issues, incomes and profits derived from the said trust property and premises to the *use,* benefit, support and maintenance of the said Robert F. Thompson, for and during and until the end of his natural life." Thompson became insolvent and under the insolvent proceedings his life interest was sold to a person, who several years later conveyed it back to him. The Court held that by the sale the trust was entirely defeated, as the object of the trust was strictly and entirely personal, and at the instance of himself and the remainderman it was declared to be at an end. In *Brillhart* v. *Mish,* 99 Md. on pages 458 and 459, that case was referred to and Judge Jones said: "The Court thus recognized the alienable quality of this equitable life estate and held that the alienation of it defeated the trust to which it had been subject." As that trust required the trustee to apply the rents, etc., to the *use, benefit, support* and maintenance of the *cestui que trust,* but it was notwithstanding held to be alienable, it is difficult to see how it can be said that the interest of Harry Tiffany was inalienable.

There is nothing in the deed which in terms prohibits the alienation or anticipation of the income, and, although some authorities in other States might justify another conclusion

within their jurisdiction, we are of the opinion that under our authorities, particularly *Wenzel* v. *Powder, Thompson* v. *Ballard,* and what was said in *Baker v. Keiser* as to the *Towers' case,* this deed did not create a spendthrift trust. We have not overlooked the clause "so that he shall have no title to or control over said last named portion of the said hereby granted property," but that in our judgment refers to the corpus and not to the income. The grantor spoke of the "share or portion" of the estate, having provided that the estate should be equally divided into three shares. He spoke of "the share or portion" of his daughter Kate, and then of "the share or portion" of his son Harry, and said that the trustee "shall manage that portion of said hereby granted property" and then after providing for the collection of the rents, issues and income thereof and payment or, application of them for the use of Harry, concluded the disposition of the life estate by the language quoted. It is manifest that he only intended to declare that Harry should not have title to or control over the third of the corpus set apart for him, as he in so many words authorized the trustee to pay over to him the income, and after it was so paid of course he would have title to it and control over it.

Having reached the conclusion that this deed did not create a spendthrift trust we will consider the question whether the petitioners can properly have relief against the Houghtons under this proceeding. We have no doubt that more relief is prayed for than can be properly granted under this petition. It may be admitted that on the application of Harry Tiffany to require the trustee to pay over the income to him it would be proper, if not necessary to make them parties, as they claim the income, or at least part, if not all of it, but that is not all that is attempted by the petition. It seeks to set aside the assignment made to them as well as the mortgages and other assignments to which they were not parties. The assignments are not in the record and hence we have no means of knowing what they include beyond the construction placed on them in the petition and from what

was said at the argument, but we understood it to be admitted that the Houghtons took their assignment subject to the mortgages. If that be so, it can not affect them injuriously if the mortgages are set aside and hence they have no real interest in the controversy as to them. But beyond all that the assignment not only purports to assign the income but the interest of the two daughters as remaindermen. We do not understand why they should be permitted to come into the trust estate and litigate their rights. They rely on grounds which were not dependent upon the question whether the deed created a spendthrift trust, for if we had held that it did, that would not have released the remainder, as such trust would only have been for the benefit of the life tenant. If they have any valid ground for setting aside the assignment they should proceed by a bill in equity against the Houghtons, and the latter should not be required to defend their assignment in connection with the mortgagees and other assignees, and the remaindermen should not be permitted to carry on such litigation in the trust case. There is nothing in the petition to show that the Court ever acted on the assignment to the Houghtons as it did in reference to the McLaughlin and Shirley transactions, and that assignment was given several years after the Shirley mortgage. We can see no reason why the Houghtons should be subjected to the annoyance, inconvenience and costs which would likely result if all of the instruments are to be attacked in the same proceeding.

The case of *Regester* v. *Regester,* 104 Md. 359, and *Trego* v. *Skinner,* 42 Md. 426, were relied on but this is not a similar case. In those cases the bills were filed to set aside a number of conveyances made it is true by debtors to different persons, but in each case all of them were alleged to have been made "for the same fraudulent purpose of hindering, delaying and defrauding his creditors." In this case no fraud is charged and it is not even alleged that the Houghtons knew of the impoverished condition of the petitioners. It may be that some of the mortgages or assign-

ments were executed under such circumstances as entitle the remaindermen or life tenant or both to relief, but even if that be so, it would not follow that the assignment of the Houghtons must be set aside. So without prolonging this opinion further we think the petition is multifarious and we are also of the opinion that the question as to the validity of the assignment should be raised by original bill and not by such a petition as this, excepting in so far as the petition may be limited to an effort to require the trustee to pay over the income to Harry Tiffany.

So without in other respects passing on the sufficiency of the allegations as affecting the Houghtons, we will reverse the order of June 27th, 1911, overruling the demurrer, for the reasons we have given. As the petitioners may desire to amend the petition we will remand the cause. As about one-half of the record was unnecessary and not connected with this appeal, we will direct that the appellants pay one-half and the appellees the other half of the costs in this Court, including the cost of transmitting the record.

> *Order reversed and cause remanded, each side to pay one-half of the costs in this Court, including cost of transmitting the record, the costs below to be paid as may be directed by the lower Court.*