RICHARD R. CHANDLER ET AL. *v.* PETER POWERS HALE ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued May 4—decision released July 19, 1977

*Robert G. Oliver,* with whom, on the brief, was *Carolyn P. Gould,* for the appellants (plaintiffs).

*John V. P. Billings,* for the appellee (named defendant).

*Robert L. Fay,* for the appellee (defendant Union Trust Company).

LOISELLE, J.   The plaintiffs sued the defendant Hale for breach of contract.  The first count in this action alleged that the defendant Hale entered into a contract with the plaintiffs to erect a dwelling at a stipulated price, that Hale did not complete the dwelling and that eventually the plaintiffs terminated Hale as contractor with resulting damages. This count has not yet been litigated to completion.

In a second count the allegations of the first count were incorporated and it was alleged further that Hale claimed to be insolvent save for his interest in a testamentary trust established under the will of his mother, Ruth Powers Hale, and that if the defendant Union Trust Company, as trustee, failed to accumulate and hold the income and principal of the trust during the pendency of the action the plaintiffs would be irreparably injured because Hale would not pay the plaintiffs, but would continue to keep himself insolvent.  The plaintiffs sought damages and temporary and permanent injunctions directing the trustee to refrain from making payments to or for the benefit of Hale during the pendency of the action, and to hold funds for application

in the event of a judgment for the plaintiffs. The trustee demurred to the second count of the complaint on the grounds that (a) the trust was a spendthrift trust,[1] (b) the plaintiffs had not reduced their claim to judgment, and (c) the principal of the trust could not be reached by creditors. The court sustained the demurrer and, on the plaintiffs' motion, rendered judgment on the second count against the plaintiffs.

At the same time that the complaint was filed, the plaintiffs also sought an order garnishing[2] the assets of Hale in the hands of the trustee. The defendant Hale moved to dissolve the garnishment on the ground that the trust was a spendthrift trust. The court granted this motion and vacated the order authorizing the garnishment.

From the judgments rendered against the plaintiffs on the demurrer sustained, and on the order vacating the garnishment, the plaintiffs have appealed to this court.

I

The trust in favor of the defendant Hale, established under the will of Ruth Powers Hale, directed the trustee to pay net income, at least quarterly, "to or for the benefit of my son, Peter Powers Hale, during the term of his life." It also authorized the trustee to pay "to or for the benefit of my said son so much of the principal of said trust fund as the

---

[1] The term "spendthrift trust" is here used in the broad sense, a trust which cannot be reached by creditors of the beneficiary, rather than in the narrower sense, a trust which incorporates a restraint on alienation or assignment by the beneficiary and a corresponding restraint on involuntary transfers by legal process.

[2] In some parts of the record, this procedure is referred to as an attachment. For purposes of clarity, it will be identified as a garnishment throughout this opinion.

Trustee, in its discretion, may deem advisable for his comfort and support." On the death of Peter Powers Hale the beneficial interest in the trust fund was to pass to others.

The trial court reluctantly concluded that *Foley* v. *Hastings,* 107 Conn. 9, 139 A. 305, controlled the decision, and required that a trust directing a trustee to pay "to or for the benefit of" a beneficiary be held a spendthrift trust. *Foley* v. *Hastings,* supra, involved a testamentary trust in which the trustee was directed (p. 11) "to pay over the net income . . . to, or apply and use the same for the benefit of" the beneficiaries. It further authorized the trustee (p. 12) to "pay over to or use and expend for such beneficiary, so much of the principal . . . as the trustee in its discretion may deem necessary" for the support, maintenance or education of a beneficiary. The will also provided: "No part of the income or principal of any property given in trust under this will shall be subject to anticipation, alienation or assignment by any beneficiary."

At the time of the *Foley* case the General Statutes provided that trust income should be liable to claims of creditors of the beneficiary unless (1) there was a provision for accumulation, or (2) the trustee was expressly authorized to withhold such income, or (3) the income was expressly given for the support of the beneficiary or his family. Rev. 1918, § 5872. It was held that the provisions of the will in question created a trust which fell within the second exception, and the income could not be reached by creditors or alienated or assigned by the beneficiaries. In reaching this conclusion, the *Foley* court reasoned (pp. 13–14): "By withholding the

income, clearly the statute does not intend an authority in the trustee not to use it at all, for the . . . [accumulation provision] expressly covers such a situation, nor is the language adapted to a situation where the trustee has power to divert the income to some other purpose." It then stated (p. 14) that payment of income *for* (rather than *to*) the beneficiaries was "as much a withholding of it from the beneficiaries as if the trustee were given authority, at its discretion, not to use it at all for them.")[3]

Prior to the enactment of the act relating to spendthrift trusts in 1899; 1899 Public Acts, chapter 210; our cases barred creditors from attaching the beneficiary's equitable interest in a trust only when the trustees were given such discretion that even the beneficiary could not force them to pay; *Farmers' and Mechanics' Savings Bank* v. *Brewer,* 27 Conn. 600; *Johnson* v. *Connecticut Bank,* 21 Conn. 148, 159; *Leavitt* v. *Beirne,* 21 Conn. 1; or where the trust was for the support of several beneficiaries. *Tolland County Mutual Fire*

---

[3] The *Foley* court did not base its decision on this ground alone. Although not relying on the prohibition of alienation, it examined the provision for payment of income for the beneficiary in the light of a provision in the trust that principal might be invaded for support, maintenance or education. Construing these together, it found that the latter provision proved the former to be more than "a mere provision for the convenient administration of the trust." Id., 15. The court reasoned that once the trustee had determined that the income was insufficient for support, maintenance and education of the beneficiaries, it was *required* to pay over principal for that purpose. "That being so, this provision characterizes the whole purpose of the testatrix; for certainly she could not have intended to compel the trustee to expend the principal for the beneficiaries, if they were to have the right to expend the income, or charge it with their debts, in any way they saw fit, and thus, by wasting it, make inroads upon the principal necessary." Id., 14-15. This rationale rests on the intent of the testatrix.

*Ins. Co.* v. *Underwood,* 50 Conn. 493, 495. In *Easterly* v. *Keney,* 36 Conn. 18, this court held that the intent to establish a spendthrift trust was insufficient to put the income beyond the reach of a beneficiary's creditors when the device used was an instruction (p. 19) that "this devise is not to enure in any manner for the use and benefit of any creditors," rather than a discretionary power of appropriation in the trustee.

An interesting comment on the circumstances surrounding the passage of the 1899 act is found in *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 220–21, 27 A.2d 166: "When the bill which eventuated in this act was introduced into the legislature, the case of *Huntington* v. *Jones,* 72 Conn. 45, 43 Atl. 564, was pending in our courts. In that case a judgment creditor of a beneficiary of a trust was seeking satisfaction of his judgment from the income of a trust to which the debtor was entitled under the provisions of a will, and the defendants claimed that the plaintiff could not prevail because, while the trustees had no power entirely to withhold the fund, they did have discretion to expend it for the debtor's use only if and when they deemed it proper to do so;[4] Records & Briefs, First District, May Term, 1899, back of page 251; they concededly did not have 'express authorization' to withhold such income. The plaintiff's attorney, Hon. Michael Kenealy, was a member of the legislature of 1899 and chairman for the House of its judiciary committee, which reported the bill to the Assembly for action. [Obituary sketch of Michael Kenealy] 90 Conn. 725. The bill as introduced provided that it should take effect on its passage, but before the

---

[4] This was not the express wording of the trust, but merely the construction urged by the defendants.

matter was acted upon the *Huntington* case had been decided by our court in favor of the plaintiffs, and, while this provision was retained, a further clause was added that the act should not apply to pending cases."

This act was described not long after its passage as one which "included our law as to spendthrift trusts so far as we had developed it, but it carried it far beyond. . . . It was, we think, an attempt to broaden our law and to attach certain definite conditions to all such trusts, whose presence should mark their validity, and whose absence should disclose their invalidity. . . . It is exclusive. Clearly it purposes to include all methods by which spendthrift trusts may be made effective." *Carter* v. *Brownell,* 95 Conn. 216, 223, 111 A. 182.

In the case of *Huntington* v. *Jones,* supra, which inspired the proposal of the 1899 act, this court held that a provision which required the trustee to apply the income "for the use of" the beneficiary did not create such discretion in the trustee as to prevent a creditor from reaching the income. (The trustees had also a discretionary power to invade principal, but this did not change the result.) The weight of authority elsewhere accords with this view. *Houghton* v. *Tiffany,* 116 Md. 655, 82 A. 831; *Matter of Sand* v. *Beach,* 270 N.Y. 281, 200 N.E. 821; *Hutchinson* v. *Maxwell,* 100 Va. 169, 181, 40 S.E. 655; Restatement, Trusts, Second, § 155, comment c; 76 Am. Jur. 2d, Trusts, § 164.

*Huntington* v. *Jones,* supra, although decided according to the law prior to the 1899 act, was still authority on the question of a trustee's discretion to withhold income, in view of the construction of that act in *Carter* v. *Brownell,* supra, as one which

incorporated prior law while adding and making more definite the devices by which a spendthrift trust could be established.

In *Foley* v. *Hastings,* supra, 13, it was stated that the "parties have assumed, in the argument of this case, that it falls within the terms of this statute, and we shall so treat it." It further decided[5] that the ultimate intention of the testatrix was to create a spendthrift trust. Whether the case was decided on the basis that the parties "assumed" that the trust was within the statute; Rev. 1918, § 5872; or that the issue to be determined was the intention of the testatrix, is conjectural. A fair reading of that opinion, however, by the United States District Court, which in deciding *In the matter of Peter P. Hale,* Bankruptcy No. 37814 (District of Connecticut, June 14, 1974) was bound to follow the law laid down by state courts, and by the trial court in this case, is that *Foley* laid down a rule that a spendthrift trust was created by direction to a trustee to pay to or use the income of a trust for the benefit of a beneficiary, without any further restrictions or compliance with § 52-321 of the General Statutes, a successor to § 5872. To that extent, the case of *Foley* v. *Hastings,* supra, is overruled.

The decision to overrule an interpretation of a statute which has been undisturbed by the legislature for fifty years is not made lightly. It is made because the holding was inconsistent with an earlier decision which was not in conflict with a statute later passed; was inconsistent with an interpretation of the statute after its enactment in *Carter* v. *Brownell,* supra; and is inconsistent with our considered interpretation of the statute.

---

[5] See n.3, supra.

In addition, to convert the words "to or for the benefit of" a beneficiary into a term of art which automatically creates a spendthrift trust would be to create such trusts even when there was no such intention on the part of the testator. The rationale underlying protection of spendthrift trusts is the "right of a testator or donor to attach to a gift of property any condition he desires which is not contrary to law or public policy." *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 217, 27 A.2d 166. Surely § 5872 and its successors cannot be construed to undercut their own foundation. Further, conversion of this phrase into such a term of art would prevent the use of it for the desirable purpose of enabling trustees to make payments for tuition, nursing care, taxes or other such expenses on behalf of a beneficiary, without the necessity of having a guardian appointed for a minor, a conservator for an invalid, or an attorney for a person away from his home.

The provisions of the will of Ruth Powers Hale did not create a spendthrift trust; the income of that trust is within the reach of creditors. It was error for the court, on the ground that the trust was a spendthrift trust, to vacate the order authorizing the garnishment.

II

For reasons already stated, the court erred in sustaining the demurrer to the second count on the ground of the spendthrift nature of the trust. The second ground of the demurrer is based upon the second sentence of § 52-321 of the General Statutes: "Any creditor of such beneficiary who has secured a judgment against such beneficiary may bring an action against him and serve such trustee with

garnishee process, and the court to which such action is returnable may direct such trustees to pay over the net income derived from such trust estate to such judgment creditor, as the same may accrue, until his debt is satisfied." The phrase "who has secured a judgment against such beneficiary" was added to the statute by 1953 Public Acts, No. 148.

This statute clearly permits a court to order *payment* by a trustee of a creditor's claim only after the claim is reduced to judgment, thus by implication barring payment before judgment. But it does not bar equitable relief, short of actual payment, during the pendency of the action. Actions in law and equity may be combined in this state, and both equitable and legal relief may be sought in the same action. *Coyne* v. *Plume,* 90 Conn. 293, 299, 97 A. 337. To require the plaintiffs first to secure judgment and then to bring a new action for payment by the trustee would run the risk that both the income and the principal would be dissipated by payment to the insolvent Hale before execution could occur. Garnishment of the trustee secures only funds in its hands which are payable to the beneficiary at the time of garnishment, and is an inadequate remedy. *Huntington* v. *Jones,* supra, 50. The second count of the plaintiffs' complaint, which stated a claim of threatened irreparable injury, was not properly demurrable on the ground that no judgment had yet been obtained. Ibid.

The trustee also demurred to the second count on the ground that the trust *principal* is not subject to garnishment under § 52-321 of the General Statutes. This ground of the demurrer does not speak to the allegations concerning the accumulation of

*income* in any way. In demurring to the count as a whole, the trustee admitted any facts provable under it, including those concerning the accumulation of income. This ground of the demurrer must therefore fail. *Taylor* v. *Lavietes,* 172 Conn. 52, 54, 372 A.2d 157. Further, while it is true that the plaintiffs cannot reach the principal of the trust unless the trustee, in its discretion, decides on a payment of principal "to or for the benefit of" Hale, it is obvious that unless the trustee is restrained from making such a payment, there is a danger that it will diminish the corpus, rendering it more difficult for the plaintiffs to satisfy their claim from the income of the trust. Thus, equitable relief may be warranted.

There is error, the judgments are vacated and the case is remanded with directions to overrule the demurrer, to reinstate the garnishment, and to proceed according to law.

In this opinion the other judges concurred.