THE GREENWICH TRUST COMPANY, TRUSTEE (ESTATE OF JESSIE M. CONVERSE) *v.* JOHN H. TYSON ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued April 8—decided July 1, 1942.

*John Keogh, Jr.,* with whom were *Gerald R. Steinberg* and, on the brief, *Raymond T. Benedict,* for the appellants-appellees (defendants Ruth T. Shoemaker et als.).

*William L. Tierney, Jr.,* for the appellants-appellees (defendants John H. Tyson et als.).

*William C. Strong,* with whom, on the brief, was *William S. Hirschberg,* for the appellee-appellant (plaintiff).

MALTBIE, C. J.   In this action the plaintiff, having recovered a judgment against John H. Tyson, sought to satisfy it from the income and principal of a trust which he had created.   While the writ contained a direction for the garnishment of various persons, including the trustee, the action was treated in the trial court and before us as one in the nature of a creditor's bill in equity.   The trial court made a decree in the plaintiff's favor.   The plaintiff, Tyson, William L. Tierney, the trustee, and the beneficiaries under the trust other than Tyson have all appealed.   The case as tried presented three issues.   The first was the right of the plaintiff to reach one-half of the principal of the trust fund under a provision that, if at the expiration of ten years from its date Tyson was living, the trustee should pay and deliver that half to him. Tyson was alive at the expiration of that period and became entitled to one-half of the principal of the fund, but it is stipulated that the trustee still holds it. There is no substantial dispute that, as the trial court held, the plaintiff has the right to avail itself of that portion of the fund.   The second question was as to the right of the plaintiff to reach the income of the fund, which, under the agreement, might be paid to Tyson.   The trial court held that it had the right to reach so much of that income as the trustee in his discretion did not deem to be required for the support and maintenance of the woman who was Tyson's wife at the time the trust was created and the support, education and maintenance of Tyson's children.   The third question concerned the plaintiff's right to reach

the remaining one-half of the principal, as to which the trial court ruled against its claim.

Since the argument of the appeal before us, Tyson has died, and his death put an end to any right he might have either in, or to dispose of, the income or principal of the fund. His executor has been made a party in his place by order of the Superior Court. He and the other parties have stipulated that there is in the possession of the trustee some undistributed income from the fund, and further that this court may proceed to decide all the issues presented on the record and in so doing may take cognizance of the fact of Tyson's death to any extent to which it affects those issues. As regards the income of the fund, his death is material only to the extent that the question now is as to the plaintiff's right to reach the accumulated income now in the possession of the trustee exclusive of any right it might otherwise have had to reach any income accruing to him in the future. As regards the plaintiff's right to reach the half of the principal to which Tyson did not become entitled at the expiration of the ten-year period, his death fixed the rights of the parties, as we shall later point out. This is an equitable proceeding and the facts determinative of the rights of the parties are those in existence at the time of final hearing. *Duessel* v. *Proch*, 78 Conn. 343, 350, 62 Atl. 152. As there was error in the judgment in one respect, we shall set it aside and remand the case for the rendition of another judgment. The hearing upon which that judgment will be entered will be the final hearing, and facts then in existence, including Tyson's death, will determine the ultimate rights of the parties. To decide the issues in disregard of his death would be to determine questions which in the last analysis would be academic. Taking that death into account, the conclusion to which the trial

court came as to the plaintiff's right to reach the half of the principal to which Tyson had not become entitled would be correct. We shall therefore act under the stipulation and determine the issues in the light of Tyson's death.

We turn, then, to the question whether the interest of Tyson in the income of the trust, which the defendants claim to be a spendthrift trust, may be reached in equity in order to satisfy from it the plaintiff's judgment. Tyson transferred a large amount of property to the trust under an instrument dated November 12, 1931. The instrument contained the following provisions: The trustee was "to pay the net income therefrom, or so much thereof as the Trustee may in its absolute discretion deem wise, to the Grantor, or to accumulate any part thereof, or to expend any part thereof directly for his support, or for the support and maintenance of his wife, or for the support, education and maintenance of his son Charles D. Tyson, or of other children if they be born to him, for a period of twenty years from the date hereof if he lives twenty years, or for so much of said twenty year period as he does live." If the grantor was alive at the expiration of ten years the trustee was to pay him one-half of the principal of the fund, the trust continuing as to the other half. If he was alive at the end of twenty years all the property in the fund, including accumulated interest, was to be paid to him and the trust terminated. Provisions were also made as to the disposition of principal and income should Tyson die either during the first or the second ten-year period; and, as regards the second period, which alone concerns us, the instrument stated that the one-half of the principal remaining in the fund should continue to be held in trust, the income to be paid to his widow, if she, but no children, survived him, until her death

or remarriage and at that time the principal should be distributed in such manner as he might direct by will or, in default of direction, to his heirs-at-law; or if children, but no widow, survived him, the fund was to be divided into as many shares as there were children, the income of one share to be paid to each of them, and the principal to be paid to him, one-half when he reached the age of twenty-one and the remainder when he reached the age of forty, with further provisions by which the issue of any child who might die would take interests under the trust. The instrument also provided that the trustee should pay, without specifying whether from principal or income, a portion of the debts left by Tyson's father, whose estate was insufficient to meet them.

Two further provisions in the instrument should be noted: "In the sole discretion of the Trustee and during the lifetime of the Grantor only, the Trustee may pay obligations of the Grantor, when requested by the Grantor so to do, out of the principal of the trust fund. After the death of the Grantor, the Trustee may in its absolute discretion pay any debts of the Grantor out of the trust funds in its possession. Nothing herein shall be construed to give a right to the Grantor to have such obligations paid or to any creditor of the Grantor either before or after his death to demand such payment from the Trustee." "The Grantor, with the consent and approval of the Trustee, may amend or amplify this trust indenture but not in such manner as to change the provisions for the disposition of principal and/or income prior to his death."

The basis upon which rest trusts of a spendthrift nature is the right of a testator or donor to attach to a gift of property any condition he desires which is not contrary to law or public policy. *In re Morgan's*

*Estate,* 223 Pa. 228, 230, 72 Atl. 498; *Smith & Son* v. *Towers,* 69 Md. 77, 89, 14 Atl. 497, 15 Atl. 92. "As a general rule, a testator has the right to impose such conditions as he pleases upon a beneficiary as conditions precedent to the vesting of an estate in him, or to the enjoyment of a trust estate by him as a *cestui que trust.* He may not, however, impose one that is uncertain, unlawful, or opposed to public policy." *Holmes* v. *Connecticut Trust & Safe Deposit Co.,* 92 Conn. 507, 514, 103 Atl. 640; *DeLadson* v. *Crawford,* 93 Conn. 402, 410, 106 Atl. 326; *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 284, 135 Atl. 555. In *Leavitt* v. *Beirne,* 21 Conn. 1, 8, we recognized that to uphold the validity of trusts in the nature of spendthrift trusts might open the way to abuses, but we sustained them upon the ground that they afforded a proper means of enabling a man to assure protection to relatives or other persons in whom he is interested, and to whom he desires to donate his property, against its waste through their own improvidence or the unfortunate influence of others. See *Nichols v. Eaton,* 91 U. S. 716, 727, 23 Law Ed. 254; 1 Bogert, Trusts & Trustees, p. 721. This being the basis and justification of such trusts, it necessarily follows that the conception of them involves the idea of bounty extended by a person to others in whose welfare he is interested. "The great current of modern authority in this country is to the effect that an equitable life estate under which the life tenant may have absolute rights, may, in appropriate language, be created by one for the benefit of another, which shall be inalienable by the *cestui que trust* and beyond the reach of creditors." *Mason* v. *Rhode Island Hospital Trust Co.,* 78 Conn. 81, 85, 61 Atl. 57. "The spendthrift trust is one which provides a fund for the benefit of another, and which secures it against his own improvidence and places it beyond the reach

of his creditors." *Carter* v. *Brownell,* 95 Conn. 216, 221, 111 Atl. 182. The reference in these quotations to a fund created by one for the benefit of another was a recognition of the implications which underlie the whole doctrine of such trusts.

The attempt of a man to place his property in trust for his own benefit under limitations similar to those which characterize a spendthrift trust is a departure from the underlying basis for the creation of such trusts. That aside, the public policy which sustains such trusts when created for the benefit of another is, where the settlor is himself the beneficiary, overborne by other considerations. In *Johnson* v. *Connecticut Bank,* 21 Conn. 148, 159, where we were considering the right of the creditor of a beneficiary of a trust to secure satisfaction from the latter's right to the income, we stated: "It is the policy of our law, that *all* the property of a debtor should be responsible for his debts. And his equitable estate may be taken, as well as his legal, provided it is subject to his controul"; and, subject to definite limitations, that has always been the policy of our law. *D'Addario* v. *Abbott,* 128 Conn. 506, 509, 24 Atl. (2d) 245. To admit the validity of such trusts would open too wide an opportunity for a man to evade his just debts to be permissible unless sanctioned by statutory enactment. This is the reason why the overwhelming weight of authority holds ineffective attempts to establish them. 1 Scott, Trusts, § 156; 1 Bogert, Trusts & Trustees, § 224; Griswold, Spendthrift Trusts, § 474; note, 119 A. L. R. 35; Restatement, 1 Trusts, § 156. "But when a man settles his property upon a trust in his own favor, with a clause retaining his power of alienating the income, he undertakes to put his own property out of the reach of his creditors, while he retains the beneficial use of it. The practical operation of the transaction is, that he

transfers a portion only of his interest, retaining in himself a beneficial interest, which he attempts by his own act to render inalienable by himself and exempt from liability for his debts." *Pacific National Bank v. Windram,* 133 Mass. 175, 176. If such trusts were sustained, "the owner need only select as trustee a near kinsman or tried friend, on whom he may rely for liberality, and thus indirectly accomplish what he cannot do directly." *Menken* v. *Brinkley,* 94 Tenn. 721, 729, 31 S. W. 92.

Trusts in the nature of spendthrift trusts are now controlled in this state by § 5723 of the General Statutes, which is quoted in part in the footnote.[1] *Carter* v. *Brownell,* supra, 223. This law was enacted in 1899. Public Acts, 1899, Chap. 210. When the bill which eventuated in this act was introduced into the legislature, the case of *Huntington* v. *Jones,* 72 Conn. 45, 43 Atl. 564, was pending in our courts. In that case a judgment creditor of a beneficiary of a trust was seeking satisfaction of his judgment from the income of a trust to which the debtor was entitled under the provisions of a will, and the defendants claimed that the plaintiff could not prevail because, while the trustees

---

[1] Sec. 5723. INCOME OF TRUST FUND, TO WHAT EXTENT LIABLE TO CREDITORS. EXPENSES OF TRUSTEE. Whenever property shall have been given to trustees to pay over the income to any person, without provision for accumulation or express authorization to the trustees to withhold such income, and the income shall not have been expressly given for the support of the beneficiary or his family, such income shall be liable in equity to the claims of all creditors of such beneficiary. Any creditor of such beneficiary may bring an action against him, and any court having jurisdiction may direct such trustees to pay over the net income derived from such trust estate to such creditor, as the same may accrue, until his debt shall be satisfied. When any such trust shall have been expressly provided to be for the support of the beneficiary or his family, a court of equity having jurisdiction may make such order regarding the surplus, if any, not required for the support of the beneficiary or his family, as justice and equity may require.

had no power entirely to withhold the fund, they did have discretion to expend it for the debtor's use only if and when they deemed it proper to do so; Records & Briefs, First District, May Term, 1899, back of page 251; they concededly did not have "express authorization" to withhold such income. The plaintiff's attorney, Hon. Michael Kenealy, was a member of the legislature of 1899 and chairman for the House of its judiciary committee, which reported the bill to the Assembly for action. 90 Conn. 725. The bill as introduced provided that it should take effect on its passage, but before the matter was acted upon the *Huntington* case had been decided by our court in favor of the plaintiffs, and, while this provision was retained, a further clause was added that the act should not apply to pending cases.

These circumstances surrounding the enactment of the law may be regarded in determining the legislative intent. *Glanz* v. *New Haven Board of Zoning Appeals*, 123 Conn. 311, 315, 195 Atl. 186. Their significance lies in their indication that the purpose was to regulate the conditions which must be met before the right of a beneficiary to receive income from a trust fund could be held to be beyond the reach of his creditors. As we pointed out in *Carter* v. *Brownell*, supra, 223: "This Act included our law as to spendthrift trusts so far as we had developed it, but it carried it far beyond. It covered a substantial part of the so-called American doctrine, but it did not enact it in whole, and it attached conditions to the validity of spendthrift trusts unknown to the American doctrine. It was, we think, an attempt to broaden our law and to attach certain definite conditions to all such trusts, whose presence should mark their validity, and whose absence should disclose their invalidity." The statute was not intended to give sanction to a

type of trust which would depart from the fundamental basis upon which trusts in the nature of spendthrift trusts rest, and be opposed to sound considerations of public policy. In construing the act it is our duty to seek the real intent of the legislature, even though by so doing we may limit the literal meaning of the broad language used. *New Haven Savings Bank* v. *Warner,* 128 Conn. 662, 668, 25 Atl. (2d) 50; *Chambers* v. *Lowe,* 117 Conn. 624, 625, 169 Atl. 912; *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 Atl. 25; *Bishop* v. *Vose,* 27 Conn. 1, 9. The situation is one where we must apply "the rule that general words and phrases may be restricted in meaning to adapt their meaning to the subject-matter in reference to which they are used." *Barber* v. *Morgan,* 89 Conn. 583, 588, 94 Atl. 984. Although the trust created by a man from his own property for his own benefit might fall within the literal wording of the statute, it does not fall within the legislative intent, and where the settlor is entitled to the income of the fund it is not protected from the just claims of his creditors. From the foregoing it necessarily follows that in the condition stated in the statute, "the income shall not have been expressly given for the support of the beneficiary or his family," the word "beneficiary" does not include the settlor of the trust; see *Schenck* v. *Barnes,* 156 N. Y. 316, 320, 50 N. E. 967; and if the settlor is entitled to receive income from it the statute does not exempt that income from the demands of his creditors.

The trust before us is not a spendthrift trust but, by reason of the discretion reposed in the trustee as to the use of the income, it is a "discretionary" trust. If in such a trust the settlor is the sole person entitled to the income, that income can be reached by his creditors. Griswold, op. cit., 481; Restatement, 1 Trusts, § 156 (2). A provision in the trust instrument that

the trustee might in its discretion withhold the income from the settlor and accumulate it would not in itself place the income beyond the reach of his creditors. *Petty* v. *Moores Brook Sanitarium,* 110 Va. 815, 817, 67 S. E. 355; and see *Warner* v. *Rice,* 66 Md. 436, 443, 8 Atl. 84. We are brought, then, to the question of the effect of the provision that the trustee in its "absolute discretion" might expend any part of the income for the support and maintenance of the wife of the settlor or the support, education and maintenance of a named son and of other children who might be born to him.

The various situations which may be presented where a creditor of a beneficiary of such a trust is seeking to satisfy his claim out of the income of the trust have been collated and ably analyzed by Professor Griswold in his work before referred to. See particularly §§ 424 et seq., 436, 439 et seq. and 484. He points out that there is considerable conflict in the authorities in cases where the settlor is not one of the beneficiaries. § 439 et seq. He finds very few cases, however, which deal with the situation where the settlor is among the group to whom the trustee may pay or for whose benefit or support he may expend the income. §§ 484, 485. Of these cases, only four deal with the question without the qualification of other distinguishing elements. In *Holmes* v. *Penney,* 3 K. & J. 90, 103, 69 Eng. Rep. R. 1035, *Johnston* v. *Zane's Trustees,* 11 Grat. (52 Va.) 552, 570, and *Roanes* v. *Archer,* 4 Leigh (31 Va.) 550, 568, the interest of the settlor in the income was held in such a situation not to be subject to be taken for his debts, while in *Bryan* v. *Knickerbacker,* 1 Barb. Ch. (N. Y.) 409, 431, a contrary result was reached. None of these cases discuss the question at length, nor are they particularly persuasive.

The outstanding factor in the situation is that,

under a trust where the trustee has absolute discretion to pay the income or expend it for the settlor's benefit, the trustee could, even though he had a like discretion to expend it for others, still pay it all to the settlor. Such a trust opens the way to the evasion by the settlor of his just debts, although he may still have the full enjoyment of the income from his property. To subject it to the claims of the settlor's creditors does not deprive others to whom the trustee might pay the income of anything to which they are entitled of right; they could not compel the trustee to use any of the income for them. The public policy which subjects to the demands of a settlor's creditors the income of a trust which the trustee in his discretion may pay to the settlor applies no less to a case where the trustee might in his discretion pay or use the income for others. The trial court was correct in holding that the plaintiff was entitled to reach the income if necessary to satisfy its judgment, but was in error in holding that its rights were limited to so much only of that income as the trustee in his discretion deemed not to be required for the support, maintenance or education of the settlor's wife and children.

The fact that the provisions of the trust agreement are ineffective to protect the income of the trust from the claims of Tyson's creditors does not invalidate the trust as a whole or in itself destroy the remainder interests created. *Egbert* v. *De Solms*, 218 Pa. 207, 209, 67 Atl. 212; *Trust Co.* v. *Bergdorf & Goodman Co.*, 167 Md. 158, 166, 173 Atl. 31; *Low* v. *Carter*, 21 N. H. 433, 435. Under the trust instrument, the rights of those designated to receive the remainder interest in the half of the principal continuing in the trust after the expiration of the first ten-year period were subject to two conditions. They would be defeated should the settlor be living at the expiration of that period and

they might be defeated by virtue of the reservation to the settlor of the right, with the consent of the trustee, to amend or amplify the instrument, although not in such a manner as to change the provisions for the disposition of the principal or income prior to his death. Whether, under a trust such as the one before us, a creditor could reach the principal during the life of the settlor, we have now no occasion to decide. See *Jones* v. *Clifton*, 101 U. S. 225, 229, 25 Law Ed. 908; *Fidelity Trust Co.* v. *New York Finance Co.*, 125 Fed. 275, 60 C. C. A. 189; *Benedict* v. *Benedict*, 261 Pa. 117, 104 Atl. 581; *Ward* v. *Marie*, 73 N. J. Eq. 510, 68 Atl. 1084; *Trust Co.* v. *Bergdorf & Goodman Co.*, supra; *Crawford* v. *Langmaid*, 171 Mass. 309, 50 N. E. 606; Griswold, op. cit., § 480; 19 Minn. L. Rev. 330; 48 Harv. L. Rev. 1197; Restatement, 1 Trusts, § 156, comment c. When Tyson died, the contingencies which might defeat the remainder interests could no longer happen, and those interests then became indefeasibly vested. *Bates* v. *Spooner*, 75 Conn. 501, 508, 54 Atl. 305; *Thomas* v. *Castle*, 76 Conn. 447, 451, 56 Atl. 854; *Daskam* v. *Lockwood*, 103 Conn. 54, 64, 130 Atl. 92. While we have found few cases dealing with a situation where the settlor of the trust, after reserving to himself the income for life, creates vested indefeasible interests, to take effect at his death, we have found none which subjects such interests to the demands of the settlor's creditors, and on principle there is no question that the creditors cannot reach those interests. Over them the settlor has no dominion, and his creditors have no more right to reach them than they would any interests in property formerly owned by him which has passed into the ownership of another. *Bryan* v. *Knickerbacker*, supra, 425; Griswold, op. cit., § 475; 1 Perry, Trusts (7th Ed.), p. 654.

It remains to consider the claim that the plaintiff

has other remedy for the collection of the debt which debars it from relief in this action, in the nature of a creditor's bill. The judgment the plaintiff is now seeking to enforce was based upon the assumption by Tyson of a debt secured by a mortgage upon property he bought, and the plaintiff still holds that mortgage. The claim of the defendants is that the plaintiff must first exhaust its remedy upon the mortgage before resorting to relief by means of a creditor's bill. It is undoubtedly quite generally held that, before a creditor's bill will lie, the creditor must have obtained a judgment at law and have at least taken out execution. 4 Pomeroy, Eq. Jur. (5th Ed.), p. 1068. In this state, however, we do not make any such technical requirement. Here a plaintiff may, in the same action, seek a judgment for the debt and relief by way of a creditor's bill; *Vail* v. *Hammond,* 60 Conn. 374, 383, 22 Atl. 954; *Bronson* v. *Thompson,* 77 Conn. 214, 217, 58 Atl. 692; and it would be anomalous to require that, if judgment at law is first obtained, the creditor must seek its satisfaction by issue of an execution before resorting to a creditor's bill. In *Lewisohn* v. *Stoddard,* 78 Conn. 575, 594, 63 Atl. 621, we said: "The main purpose of requiring the plaintiff in a creditor's bill to show that he had exhausted his remedy at law was to assure the determination of his status as a creditor by a jury, if a trial by jury should be claimed by any party adversely interested"; and we pointed out that our procedure left little room for the operation of the principle. See *Mathewson* v. *Wakelee,* 83 Conn. 75, 80, 75 Atl. 93. The only requirement for the maintenance of such a bill in this state is that the plaintiff does not have adequate remedy at law. The fact that the plaintiff held a mortgage which it might have foreclosed is not sufficient to prevent the bringing of the action. In the first place, an action to foreclose

a mortgage is not a legal remedy. That aside, ordinarily a mortgagee may, at its option, proceed to collect the debt or to enforce the mortgage; *New Haven Savings Bank* v. *Warner,* 128 Conn. 662, 666, 25 Atl. (2d) 50, and, as stated in *Tucker* v. *McDonald,* 105 Mass. 423, 424, we see no reason for applying a different rule because the mortgagor is seeking to collect the debt by a creditor's bill. Moreover, in this case the amount of the judgment was $25,189.82, while the trial court has found that the fair market value of the property was $20,000. Aside from the delay which would follow an attempt to realize upon the mortgage, the full amount of the judgment could not be secured in that way. In *Finance Corporation of New England, Inc.* v. *Scard,* 100 Conn. 712, 716, 124 Atl. 715, it was held sufficient justification for resorting to a creditor's bill that the amount of property which might be realized by proceedings at law would fall short of the plaintiff's claim, and, while the discrepancy between the debt and the property there available as a result of proceedings at law was relatively greater than in the instant case, the decision is controlling as regards the principle.

The final claim of the defendants is that the court should have marshalled the remedies by requiring that the plaintiff first resort to the mortgage before proceeding against the income, which, in part at least, the trustee might, in his discretion, have used for their support and maintenance or education. The basis of marshalling is that, "where one creditor has security on two funds of his debtor, and another creditor has security for his debt on only one of those funds, the latter has a right in equity to compel the former to resort to the other fund, if it is necessary for the satisfaction of both creditors, provided it will not prejudice the rights or interests of the party entitled to the

double fund, nor do injustice to the common debtor, nor operate inequitably on the interests of other persons." *Ayres* v. *Husted*, 15 Conn. 504, 515. The defendants, for whose benefit a part of the income of the fund might be used, are not in the class of creditors, because that use was at the absolute discretion of the trustee and they could not compel it. That aside, the principle ordinarily applies only to secured creditors. 35 Am. Jur. 394, § 18; 2 Story, Eq. Jur. (14th Ed.), p. 232, note. Nor will the doctrine ordinarily be applied where the effect would be to compel one of the creditors to proceed by an independent action, such as for the foreclosure of a mortgage, because that would be to place an additional burden upon the creditor against whom the marshalling is sought. *Emmons* v. *Bradley*, 56 Me. 333, 338; *Wolf* v. *Smith*, 36 Iowa 454, 457; *Herriman* v. *Skillman*, 33 Barb. (N. Y.) 378, 384. The trial court correctly refused to order marshalling in this case.

There is error, the judgment is set aside and the case is remanded with direction to the trial court to enter judgment for the plaintiff in accordance with that now on file except that, if application of the amount of the one-half of the principal to which Tyson became entitled at the expiration of ten years, in so far as the judgment directs that it shall be applied toward the satisfaction of the plaintiff's claim, is insufficient for that purpose, the trustee shall be directed to apply to the discharge of that claim any accumulation of income from the fund in his hands at Tyson's death.

In this opinion the other judges concurred.