**In re CENTURY BRASS PRODUCTS, INC.**

**CENTURY BRASS PRODUCTS, INC., Movant–Appellee,**

v.

**COLONIAL BANK, Appellant,**

**General Electric Credit Corp., Appellee, et al.**

**Civ. No. H–87–207(JAC).**

United States District Court, D. Conn.

Jan. 24, 1989.

278

Francis G. Pennarola, Danbury, Conn., for appellant Colonial Bank.

Thomas J. Webber, New York City, for appellee General Elec. Credit Corp.

Lissa J. Paris, Hartford, Conn., for movant-appellee Century Brass Products, Inc.

Peter D. Wolfson, New York City, for amicus curiae.

## RULING ON APPEAL FROM BANKRUPTCY COURT

JOSÉ A. CABRANES, District Judge:

This appeal from an order of the Bankruptcy Court (Krechevsky, C.B.J.) dated February 5, 1987, involves the sale of certain of the idle machinery and equipment of Century Brass Products, Inc. ("Century Brass") to Pan Metals Corp. ("Pan Metals"). These items, along with the remainder of Century Brass' equipment and machinery, were subject to a blanket lien in favor of General Electric Credit Corp., now General Electric Capital Corp. ("GECC"). At the time of the sale Century Brass was involved in a bankruptcy reorganization pursuant to Title 11, U.S.C. ("the Bankruptcy Code"), Chapter 11. Among the items sold was a Technica–Guss continuous casting machine ("the T.G."), which was subject to a lien in favor of Colonial Bank, now Bank of Boston, Connecticut ("BOBC"), in the amount of approximately $640,000. The T.G. was valued by the Bankruptcy Court at $375,000. The parties agree that BOBC's lien was junior to GECC's lien.

After payment of certain items not here in dispute to Security Pacific Commercial Leasing, Inc., the remainder of the proceeds of the sale, including the $375,000 arguably attributable to the sale of the T.G., was ordered turned over to GECC pursuant to its blanket lien. BOBC objected to this distribution, requesting that $375,000 from the sale be allocated to BOBC and that GECC satisfy its lien by marshalling Century Brass' other assets. In the alternative, BOBC asked that it be provided "adequate protection" of its interest in the T.G., pursuant to 11 U.S.C. § 363(e).[1] BOBC did not offer evidence in support of its request. The Bankruptcy Court overruled BOBC's objection, and this

---

1. Section 363(e) provides, "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

appeal followed. The parties requested that the matter be decided on the basis of the briefs submitted and without oral argument.

## I.

■ A lienholder's right to obtain the marshalling of assets determines the nature and effect of the lienholder's property interest and is therefore itself a property right. Absent controlling federal law, property interests in bankruptcy are determined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Accordingly, the application of the doctrine of marshalling of assets in this case is governed by Connecticut law. *See In re Vermont Toy Works, Inc.,* 82 B.R. 258, 289 (Bankr.D.Vt.1987); *In re C & B Oil Co.,* 72 B.R. 228, 230 (Bankr.N.D.Ohio 1987).

Connecticut law provides the following statement of the doctrine of marshalling of assets:

> The basis of marshalling is that, "where one creditor has security on two funds of his debtor, and another creditor has security for his debt on only one of those funds, the latter has a right in equity to compel to former to resort to the other fund, if it is necessary for the satisfaction of both creditors, provided it will not prejudice the rights or interests of the party entitled to the double fund, nor do injustice to the common debtor, nor operate inequitably on the interests of other persons."

*Greenwich Trust Co. v. Tyson,* 129 Conn. 211, 227–28, 27 A.2d 166 (1942) (quoting *Ayres v. Husted,* 15 Conn. 504, 515 (1843)). The doctrine will not ordinarily be applied "where the effect would be to compel one of the creditors to proceed by an independent action, such as for the foreclosure of a mortgage, because that would be to place an additional burden upon the creditor against whom the marshalling is sought."

*Greenwich Trust,* 129 Conn. at 228, 27 A.2d 166.

## II.

■ A right in bankruptcy to obtain the marshalling of assets is not expressly provided in the Bankruptcy Code. Nonetheless we will assume, for purposes of argument only, that in an appropriate case the Bankruptcy Court, as a court of equity, could order the marshalling of assets for the benefit of a creditor pursuant to 11 U.S.C. § 105(a).[2] *See Vermont Toy Works,* 82 B.R. at 289; *In re United Retail Corp.,* 33 B.R. 150 (Bankr.D.Haw.1983); *In re Larry's Equipment Service, Inc.,* 23 B.R. 132 (Bankr.D.Me.1982). On the basis of the full record of this case, we cannot conclude that this case was one in which marshalling should have been permitted.

The doctrine of marshalling applies only to situations in which the creditor who would be compelled to avoid satisfying its debt from certain funds would not be prejudiced. *See Greenwich Trust,* 129 Conn. at 227–28, 27 A.2d 166. At the very least, this rule requires that such a creditor not receive less if there is marshalling than if there is not. *See Victor Gruen Associates v. Glass,* 338 F.2d 826 (9th Cir. 1964). In this case GECC might well have received less under marshalling; GECC plausibly suggests that, at the time of BOBC's request for marshalling, it was uncertain whether GECC would recover the entire amount of its debt. *See* Memorandum of Law of General Electric Capital Corporation in Opposition to Appellant's Request for Marshaling of Assets (filed March 14, 1988) at 20–21. Furthermore, since at that time there were no plans to sell any of Century Brass' other assets, marshalling would have produced an arguably prejudicial delay in the payment of GECC's debt. *See Matter of Woolf Printing Corp.,* 87 B.R. 692, 694 (Bankr.M.D. Fla.1988).

---

**2.** Section 105(a) provides, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

In any event, BOBC proffered no evidence to show that GECC would not be prejudiced. While we see no basis for concluding that it was necessary for BOBC to demonstrate lack of prejudice to GECC by "clear and convincing evidence," *cf. Vermont Toy Works*, 82 B.R. at 323, we do hold that, in light of the prejudice to GECC this record suggests, BOBC's failure to submit any evidence at all regarding lack of prejudice allowed a conclusion that a marshalling of assets would indeed prejudice GECC. Accordingly, it was not error for the Bankruptcy Court to refuse to permit marshalling.

### III.

■ We turn next to the failure of the Bankruptcy Court to enter an order of "adequate protection" regarding BOBC's interest in the T.G. The Bankruptcy Code provides that "on request of an entity that has an interest in property ... sold, ... the court ... shall prohibit or condition such ... sale ... as is necessary to provide adequate protection of such an interest." 11 U.S.C. § 363(e). This statute clearly required the Bankruptcy Court, in approving the sale to Pan Metals, to provide "adequate protection" regarding any interest in the T.G. or in any other property sold, including security interests or rights to compel marshalling of assets. BOBC admits, however, that if an interest has a value of zero no "adequate protection" is necessary. *See* Appellant's Brief (filed Nov. 16, 1987) at 13.

The full record of this case does not demonstrate that, at the time of the sale to Pan Metals, BOBC had any interest in the T.G. entitled to "adequate protection." Because GECC had a superior lien that exceeded the amount of funds raised from the T.G., BOBC's lien was without value. Moreover, as discussed above, the Bankruptcy Court could conclude that BOBC had no right to compel marshalling of assets (a right that, if it had existed in this case, would arguably have been entitled to "adequate protection") because of the prejudice to GECC from marshalling. It therefore was not error for the Bankruptcy

Court to refuse BOBC's request for "adequate protection."

### IV.

BOBC argues that the result of the Bankruptcy Court's action is the unfair penalizing of a secured creditor to the benefit of the unsecured creditors. *See* Appellant's Brief (filed Nov. 16, 1987) at 12–13. The reality in these circumstances, however, is that, whatever the label on its interest in the T.G., BOBC was *not* a secured creditor. GECC's superior interest in the T.G. effectively meant that BOBC could not look to that collateral for payment, and BOBC had no right to compel marshalling to protect itself. This result is not a consequence of being in the Bankruptcy Court; had Century Brass not filed a petition under Chapter 11 of the Bankruptcy Code and had GECC levied on the T.G. by obtaining a writ of execution, BOBC still would have had no rights in the proceeds from the T.G. and on this record would not have been able to compel marshalling. Only a lien superior to GECC's, such as a purchase money security interest in the T.G., or a showing that marshalling of assets would not have prejudiced GECC would have given BOBC the attributes of a secured creditor.

### CONCLUSION

For the reasons stated above, the order of the Bankruptcy Court is AFFIRMED, pursuant to Bankruptcy Rule 8013.

It is so ordered.