**In re Duarte BORGES and Ana Borges d/b/a Bridgeport Paving Co., Inc., Debtors.**

**Bankruptcy No. 94–51459. Document Nos. 48, 54.**

United States Bankruptcy Court, D. Connecticut.

July 31, 1995.

Ira B. Charmoy, Charmoy & Nugent, Bridgeport, CT, for debtors.

Stacey M. Daves–Ohlin, Gladstone, Schwartz, Blum & Woods, Bridgeport, CT, for respondent First Lake Corp.

## MEMORANDUM AND ORDER ON DEBTOR'S AMENDED MOTIONS PURSUANT TO 11 U.S.C. § 506(a) AND (d)

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtor, Ana Borges, seeks to invoke the equitable doctrine of marshaling [1] in connection with two motions under § 506(a) so as to avoid a senior lien and then apply § 551 to preserve the equity for the benefit of the estate. For the reasons that follow, I conclude that marshaling may not be applied and that the debtor's proposed use of §§ 506 and 551 is contrary to the bankruptcy code.

### BACKGROUND

This chapter 11 case was commenced on June 30, 1994. On that date, the debtor owned two adjacent parcels of real property located at 541 and 565 Knowlton Street, Bridgeport. On October 12, 1994 the debtor filed the instant motions under § 506(a) seeking a determination of the value of the parcels and the secured or unsecured status of liens encumbering them. Secured creditors First Lake Corporation ("First Lake") and the Internal Revenue Service objected. Only the First Lake objection is at issue here.

The parties have stipulated to the value of the parcels and amount and priority of the liens as follows:

541 Knowlton Street: Value of $49,750
| | | |
|---|---|---|
| 1. | City of Bridgeport, Tax Collector | $ 2,403.81 |
| 2. | T & D Associates (first mortgage) | 26,395.51 |
| 3. | First Lake (second mortgage) | 97,103.80 |

565 Knowlton Street: Value of $53,750
| | | |
|---|---|---|
| 1. | City of Bridgeport, Tax Collector | $ 2,361.23 |
| 2. | Water Pollution Control Authority | 4,351.15 |
| 3. | T & D Associates (first mortgage) | 26,395.51 |
| 4. | First Lake (second mortgage) | 97,103.80 |

---

1. An alternative spelling of the word is "marshalling." *See* Webster's New Collegiate Dictionary 705 (G. & C. Merriam Co. 1977).

In addition, there are two other creditors who hold liens encumbering each parcel that are subordinate to First Lake's mortgage. *See* Amended Motions, filed October 12, 1994.

The first mortgage of T & D Associates ("T & D") encumbers both parcels but secures a single claim in the amount of $26,-395.51.[2] First Lake's claim in the amount of $97,103.80 was created by a mortgage note dated July 7, 1986 and is secured by a second mortgage of that date encumbering both parcels. *See* Proof of Claim, filed July 21, 1994. The combined value of the two parcels is $103,500. Liens superior to First Lake's mortgage secure claims totalling $35,511.70 which leaves a net equity of $67,988.30 available to First Lake's second mortgage. The debtor argues that each parcel should be examined independently, so that T & D's secured claim would be treated as though it encumbers each parcel separately in the amount of $26,395.51. That approach would result in equity of only $20,950.68 on 541 Knowlton and $20,642.11 on 565 Knowlton, or a total of $41,592.79 in equity available to First Lake's mortgage. The debtor further seeks to invoke the doctrine of marshaling to require the first mortgage holder, T & D, to satisfy its lien out of only 565 Knowlton, and to void T & D's lien on 541 Knowlton. The debtor then seeks to preserve the value of the voided lien for the benefit of the estate pursuant to § 551.

The issues are: (i) may the debtor apply the doctrine of marshaling under the foregoing facts; (ii) if so, does that doctrine result in the voiding of T & D's lien and the preservation of value for the estate under § 551; and (iii) if the answers to (i) and (ii) are no, may the debtor treat First Lake's claim as secured only to the extent of $41,592.79 by examining the security structure on each parcel independently of the other.

## DISCUSSION

Section 506(a) and (d) provide in relevant part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate

has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

Section 544(a) provides in relevant part:

The trustee shall have, as of the commencement of the case ... the rights and powers of, or may avoid any transfer of property of the debtor ... that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists....

Section 551 provides in relevant part:

Any transfer avoided under section ... 544 ... or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Section 1107(a) provides in relevant part:

(a) [A] debtor in possession shall have all the rights ... and powers ... of a trustee serving in a case under this chapter.

### 1. Standing and Applicable Law

■ The debtor asserts that § 544(a) empowers a trustee, and pursuant to § 1107(a) a debtor in possession, to invoke the doctrine

---

2. The claims of both T & D and First Lake are scheduled and are not stated to be disputed, contingent, or unliquidated. *See* Schedule D,

filed August 8, 1994. Both claims are therefore deemed filed even in the absence of a proof of claim. *See* § 1111(a).

of marshaling as a hypothetical lien creditor. First Lake does not dispute that contention, and most courts that have addressed the issue agree that a trustee has standing to invoke the marshaling doctrine in appropriate circumstances. *See, e.g., Herkimer County Trust Co. v. Swimelar (In re Prichard)*, 170 B.R. 41, 45 (Bankr.N.D.N.Y.1994); *In re Wilmot Mining Co.*, 167 B.R. 806, 811 (Bankr.W.D.Pa.1994); *Chittenden Trust Co. v. Sebert Lumber Co. (In re Vermont Toy Works, Inc.)*, 135 B.R. 762, 768 (D.Vt.1991); *Fundex Capital Corp. v. Balaber–Strauss (In re Tampa Chain Co., Inc.)*, 53 B.R. 772, 777–78 (Bankr.S.D.N.Y.1985). I conclude that the debtor in possession has standing to invoke the doctrine. *See Topcon Instrument Corp. of Am. v. West Coast Optical Instruments, Inc. (In re West Coast Optical Instruments, Inc.)*, 177 B.R. 720, 722 (M.D.Fla. 1992).

▮ The parties also agree that Connecticut law governs the application of the marshaling doctrine. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *accord Nobelman v. Am. Sav. Bank*, ―― U.S. ――, ――, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993); *see Century Brass Prods., Inc. v. Colonial Bank (In re Century Brass Prods., Inc.)*, 95 B.R. 277, 279 (D.Conn.1989); *In re C & B Oil Co., Inc.*, 72 B.R. 228, 230 (Bankr.N.D.Ohio 1987).

### 2. Equitable Marshaling

▮ The debtor relies on both Connecticut statutory and common law. She cites Conn. Gen.Stat.Ann. § 52–380i (West 1991), which provides:

Upon proceedings for the foreclosure of any judgment lien, when the judgment creditor holds a mortgage upon real estate in this state as security for the debt, or any part of it, that has gone into the judgment, which mortgage is a first charge upon the property mortgaged, the court shall, upon the motion of the judgment debtor or any later encumbrancer on the property covered by the judgment lien, order such mortgaged property to be first applied to the debt secured by it, at its cash value, to be ascertained by the court; and a foreclosure of the judgment lien shall be granted only as to the portion of such judgment that remains unsatisfied.

▮ The plain language of § 52–380i provides that it applies only where a creditor holds both a judgment lien on property of a debtor and a mortgage as security for the same debt, in which event the debtor could, in the action to foreclose the judgment lien, move the court to require the creditor to enforce its rights under the mortgage before it seeks satisfaction from the judgment lien. The Connecticut Supreme Court has held that the predecessor to § 52–380i "clearly indicates that its provisions may be invoked only in a proceeding to foreclose a judgment lien." *Little v. United Investors Corp.*, 157 Conn. 44, 48, 245 A.2d 567 (1968); *see also Hartford Nat'l Bank and Trust Co. v. Kotkin*, 185 Conn. 579, 582 n. 4, 441 A.2d 593 (1981) (per curiam) ("The statutory right to marshaling ... would not be available to the defendants until there is a proceeding for satisfaction of the judgment."); *Connecticut Nat'l Bank v. Higganum Supply, Inc.*, Case No. 65591, 1993 WL 7667, at *4 (Conn.Super.Ct., Jan. 11, 1993) ("General Statutes Sec. 52–380i concerns the foreclosure of a judgment lien and nowhere does it provide that the doctrine of marshalling securities may be used as a special defense to a foreclosure action."). The statute was enacted to remedy the situation in which a lender obtains a security interest on a borrower's property, the borrower transfers that property to a person who assumes and agrees to pay the security interest, that person subsequently defaults, and the lender obtains a judgment lien applicable to all of the original borrower's property and attempts to proceed against that property prior to foreclosing the security interest. *See Merchants Bank and Trust Co. v. Pettison*, 112 Conn. 652, 654–55, 153 A. 789 (1931). The statute was enacted because the common law doctrine of marshaling did not protect the judgment debtor under that specific factual scenario. *Id.* Appli-

cation of the statute must be limited to the specific inequity it was designed to address. *See Concept Assocs., Ltd. v. Bd. of Tax Review of the Town of Guilford,* 229 Conn. 618, 624, 642 A.2d 1186 (1994) (a statute must be construed in light of and so as to effectuate its intended purpose).

Neither T & D nor First Lake is attempting to enforce any judgment lien; indeed, the debtor has offered no evidence that either creditor even holds such a lien. No mortgaged property is being "applied" or foreclosed by T & D or First Lake to collect any debt. The facts here in no way resemble the situation which § 52–380i was intended to address. Accordingly, I hold that § 52–380i does not apply.

The debtor next turns to Connecticut's common law of marshaling. In *In re Century Brass Prods., Inc., supra,* 95 B.R. at 279, the court noted:

▬▬▬ Connecticut law provides the following statement of the doctrine of marshalling of assets:

> The basis of marshalling is that, "where one creditor has security on two funds of his debtor, and another creditor has security for his debt on only one of those funds, the latter has a right in equity to compel [the] former to resort to the other fund, if it is necessary for the satisfaction of both creditors, provided it will not prejudice the rights or interests of the party entitled to the double fund, nor do injustice to the common debtor, nor operate inequitably on the interests of other persons."

*Greenwich Trust Co. v. Tyson,* 129 Conn. 211, 227–28, 27 A.2d 166 (1942) (quoting *Ayres v. Husted,* 15 Conn. 504, 515 (1843)).

The prerequisites for common law marshaling are (i) the existence of two secured creditors with a common debtor,[3] (ii) the existence of two funds belonging to the debtor, and (iii) the right of the senior creditor to satisfy its claim from both funds, while the other creditor may resort to only one. *The New Haven Bank N.B.A. v. Jackson,* 119 Conn. 451, 453, 177 A. 387 (1935); *In re Vermont Toy Works, Inc., supra,* 135 B.R. at 767 (Vermont law). Marshaling is not applicable where the only collateral that secures a senior lien is also the only collateral that secures a junior lien, even if the collateral is capable of division and the senior lien could be satisfied out of one of the divided parcels. *The New Haven Bank N.B.A. v. Jackson, supra,* 119 Conn. at 453–54, 177 A. 387. The doctrine of marshaling "ordinarily applies only to secured creditors. Nor will the doctrine ordinarily be applied where the effect would be to compel one of the creditors to proceed by an independent action, such as for the foreclosure of a mortgage, because that would be to place an additional burden upon the creditor against whom the marshalling is sought." *Greenwich Trust Co. v. Tyson, supra,* 129 Conn. at 228, 27 A.2d 166 (citation omitted). A junior lienor with no equity in the security, like an unsecured creditor, may not generally require marshaling. *Bradford Realty Corp. v. Beetz,* 108 Conn. 26, 30–31, 142 A. 395 (1928).

▬▬▬ In the context of a federal tax lien proceeding, the United States Supreme Court has ruled that the doctrine of marshaling may be employed only where its application is fair to *all* creditors who have an equal or superior equity in the property to that of the creditor requesting marshaling.

> [M]arshaling ... is founded ... in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbi-

**3.** Perhaps the most common application of the marshaling doctrine is by chapter 7 trustees who attempt to use the doctrine to force secured creditors to resort first to collateral in which the estate has no interest. The "common debtor" requirement often frustrates those attempts, because it generally renders marshaling unavailable where the secured creditor has an interest in both estate property and property of a nondebtor. *See, e.g., In re C & B Oil, Inc., supra,* 72 B.R. at 231. The courts have recognized three equitable exceptions to the common debtor rule: where the nondebtor (typically a corporate debt-

or's controlling shareholder who has guaranteed the debt and secured the guaranty with his or her own property) is the alter ego of the debtor; where the nondebtor's property should equitably be deemed a capital contribution to the debtor; or where the nondebtor has engaged in inequitable conduct. *See, e.g., Matter of Dealer Support Servs. Int'l, Inc.,* 73 B.R. 763, 765 (Bankr. E.D.Mich.1987). As noted *infra,* the common debtor issue is not implicated here, because the debtor in possession and the secured creditors all assert interests in the same property, which is property of the estate.

trary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties. Thus, state courts have refused to apply it where ... the rights of third parties having equal equity would be prejudiced....

*Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963) (citations omitted). *See also In re Wilmot Mining Co., supra,* 167 B.R. at 811 (marshaling "may be exercised only when so doing will work no injustice upon any party connected to the litigation") (Ohio law). Connecticut law recognizes that marshaling may not be applied to the detriment of other secured creditors. *See Bryson v. Newtown Real Estate and Development Corp.,* 153 Conn. 267, 271, 216 A.2d 176 (1965) ("If the first mortgage could have been satisfied by drawing on the debtor's property in such a manner as to assure payment of both mortgages, to the burden of the debtor, equity would have required that it be done; but if the burden is to fall on another creditor, by dissipating his security, the same equitable considerations are not present and the rule does not apply.").

 I note at the outset that the debtor's attempt to invoke the marshaling doctrine at this stage of the case is premature. The doctrine is intended to achieve equity in the distribution of assets among secured creditors. It is most often invoked in connection with the orderly liquidation of estate assets in a chapter 7 case or the sale of assets pursuant to a chapter 11 plan. *See, e.g., In re Wilmot Mining Co., supra,* 167 B.R. at 806. Here, the debtors have not proposed a plan, and it is not clear if the assets in question will be retained or liquidated. *See, e.g., Hartford Nat'l Bank and Trust Co. v. Kotkin, supra,* 185 Conn. at 581, 441 A.2d 593 ("The defendants' counterclaim [for equitable marshaling of securities] is premature; the time for the defendants to show that they are entitled to marshaling is when ... realization [out of the security] is sought."); *cf. In re Jenkins,* 99 B.R. 949, 952 (Bankr.W.D.Mo.1988) ("If [the] debtors could

not succeed in an action to require marshaling of assets, they certainly cannot obtain the same result through the confirmation of a plan."). I have decided to address the merits of the debtor's attempt to employ the doctrine of marshaling notwithstanding its inappropriate timing because, for the reasons that follow, marshaling will never be available under the facts presented here.

 First, as noted, the doctrine of marshaling will not be employed to prejudice creditors with security interests of a priority equal to or higher than that of the security interest of the party seeking marshaling. "The law is fairly clear that while this Court has the equitable power to order marshaling, it will not be applied at the request of the Trustee to the detriment of a senior and junior lien creditor." *Murdock v. Security State Bank of Harlem (In re Murdock),* 134 B.R. 417, 423 (Bankr.D.Mont.1991). While it is true that § 544(a) gives a debtor in possession hypothetical judicial lien holder status, that status is held for the benefit of the estate, and is not intended to elevate the debtor and unsecured creditors to a status above that of a prepetition security interest holder. "It is not appropriate for a party, asserting a valid security interest to be defeated in its expectations by a creditor, or creditors, having no such interest." *In re Gibson Group, Inc.,* 151 B.R. 133, 135 (Bankr.S.D.Ohio 1993) (unsecured creditors' committee could not employ the doctrine of marshaling to the detriment of a junior secured creditor); *accord Exchange Bank of Kingstree v. South Carolina Nat'l Bank (In re Dig It, Inc.),* 129 B.R. 65, 67 (Bankr. D.S.C.1991) (a trustee could not compel a senior creditor to proceed against real estate that was subject to a junior lien to the detriment of the junior lien holder, even though the unsecured creditors would receive a benefit); *Fed. Land Bank of Columbia v. Tidwell (In re McElwaney),* 40 B.R. 66, 70–71 (Bankr.M.D.Ga.1984); *Canal Nat'l Bank v. Larry's Equip. Serv., Inc. (In re Larry's Equip. Serv., Inc.),* 23 B.R. 132, 134 (Bankr. D.Me.1982). Thus, some courts have held that because a junior secured creditor has superior rights in equity to those of unsecured creditors, prejudice to the interests of

unsecured creditors is not a sufficient ground to warrant denial of a junior secured creditor's marshaling request. *In re West Coast Optical Instruments, Inc., supra,* 177 B.R. at 722 ("Injury to persons other than the senior lienholder is generally relevant only where the third person has a right or equity superior or equal to that of the person requesting the marshaling order."); *In re Robert E. Derecktor of Rhode Island, Inc.,* 150 B.R. 296, 300 (Bankr.D.R.I.1993) ("The caveat against causing harm or prejudice to others applies only to parties having equity *equal* to the party seeking to invoke marshaling.").

The debtor's attempt to employ marshaling would undeniably work to the detriment of First Lake, which has a superior equity to this debtor in possession and the unsecured creditors she seeks to benefit under § 544(a). The debtor does not dispute that First Lake has a valid security interest in real property valued at $103,500, and that the total of all secured claims secured by liens senior to First Lake's mortgage is only about $35,-511.70, affording First Lake equity of $67,-988.30. If the debtor could marshal and preserve the first lien position on one parcel, First Lake's equity would be reduced to $41,-592.79, with the difference applied to the benefit of unsecured creditors or the debtor. The debtor would in effect have required T & D to satisfy its senior lien out of First Lake's security. The debtor would thus achieve the equivalent of an equitable subordination under § 510(c) without any showing that First Lake's conduct or the nature of its claim warrants such treatment.

Second, assuming that the debtor may rely on § 544(a)(1) to assert rights as a hypothetical judicial lien holder, that subsection gives the debtor the rights of a lien creditor with a judicial lien "on all property on which a creditor on a simple contract could have obtained ... a judicial lien." Because the mortgagees and the debtor in the role of a

hypothetical judicial lien creditor all hold liens on *both* parcels, the doctrine of marshaling is facially inapplicable. There is no creditor which "has security for his debt on only one of those funds." *Greenwich Trust Co. v. Tyson, supra,* 129 Conn. at 227, 27 A.2d 166.[4] Even if § 544(a) would give the debtor a lien, that interest would not enjoy a superior status over the liens in place at the commencement of the case. Thus, by virtue of her § 506(a) motions, the debtor's hypothetical judicial liens would be totally unsupported by collateral, and she is deemed to hold only unsecured claims notwithstanding her § 544(a) status. *See In re San Jacinto Glass Indus., Inc.,* 93 B.R. 934, 937 (Bankr. S.D.Tex.1988). The debtor stands in the shoes of a wholly unsecured judicial lien creditor, and equity does not afford such a creditor the right to require marshaling. Unsecured creditors may not generally compel marshaling. *See In re Gibson Group, Inc., supra,* 151 B.R. at 135; *Craner v. Marine Midland Bank, N.A. (In re Craner),* 110 B.R. 111, 123 (Bankr.N.D.N.Y.1988), *rev'd in part on other grounds,* 110 B.R. 124 (N.D.N.Y.1989); *Bradford Realty Corp. v. Beetz, supra,* 108 Conn. at 30–31, 142 A. 395.

Third, while T & D has not appeared in this proceeding, the debtor has not shown that its rights would not be prejudiced by the attempted marshaling. "At the very least, ... a creditor [compelled to marshal assets must] not receive less if there is marshalling than if there is not." *In re Century Brass Prods., Inc., supra,* 95 B.R. at 279; *see also In re Prichard, supra,* 170 B.R. at 45. T & D bargained for a lien on both parcels. The debtor seeks to limit T & D's first mortgage to 565 Knowlton, yet she has not shown that 565 Knowlton is marketable independently of 541 Knowlton, or that having a lien on only 565 Knowlton is the equivalent of having a lien on both parcels. If, for example, the value of the parcels when sold together is

4. For the same reason, I agree with the debtor's position that First Lake likewise cannot assert the marshaling doctrine. First Lake has a security interest in both parcels, so there is no reason in equity why the senior creditor should be required to look to only one of the two parcels. It is noted, however, that if both First Lake and the debtor could invoke the marshaling doctrine, First Lake would hold the superior equity and would be entitled to invoke the doctrine for its benefit even if that worked to the detriment of the debtor and the estate. *See First City Nat'l Bank of Midland v. Mid–West Motors, Inc. (In re Mid–West Motors, Inc.),* 82 B.R. 439, 443 (Bankr. N.D.Tex.1988).

greater than the sum of the values of each parcel sold separately, both T & D and First Lake could be prejudiced in the event of a post-confirmation default.

 Fourth, if the debtor seeks to employ marshaling to eliminate T & D's lien on 541 Knowlton, and preserve the value thereby created to the prejudice of First Lake and the other subordinate lien holders, that result may be accomplished only through an adversary proceeding. *See* Rule 7001(2), (7) Fed.R.Bankr.P.; *In re El Paso Truck Center, Inc.*, 129 B.R. 109, 113 (Bankr.W.D.Tex. 1991); *Matter of Feldhahn*, 92 B.R. 834, 836 (Bankr.S.D.Iowa 1988); *Matter of Mel–O–Gold, Inc.*, 88 B.R. 205, 207 (Bankr.S.D.Iowa 1988). This is not a case where T & D's lien would be invalidated under § 506(a) and (d) by operation of law. T & D is admittedly oversecured as to both parcels. If the debtor seeks to alter that result through a creative application of §§ 506, 551, and marshaling, to the possible prejudice of T & D, First Lake, and the other subordinate lien holders, the affected parties are entitled to the enhanced procedural protections available in an adversary proceeding.[5] I should emphasize, however, that any such action would fail because as noted *supra* marshaling is not available to the debtor under the facts of this case.

 The debtor's attempted use of the marshaling doctrine has been described by the Ninth Circuit as "reverse marshaling," which "refers to a situation in which the equitable doctrine of marshaling is distorted in such a way that it works to the disadvantage of a junior secured creditor." *Owens–Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.)*, 788 F.2d 541, 542 & n. 1 (9th Cir.1986). In *Center Wholesale*, the court held that a debtor in possession could not force a senior lien holder to satisfy its claim out of assets that were also subject to a junior lien, where that result prejudiced the junior lien holder to the estate's benefit.[6] "The case law is quite clear that neither a trustee nor a debtor in possession can force 'reverse marshaling' of assets by requiring a senior lienor to satisfy its claim out of collateral also securing a junior lienor's interest when the senior lienor has other collateral it may draw from first." *In re Jenkins, supra,* 99 B.R. at 952.

The cases relied upon by the debtor are inapposite. For example, in *Woolf Printing Corp. v. Mac Papers, Inc. (Matter of Woolf Printing Corp.)*, 87 B.R. 692, 694 (Bankr. M.D.Fla.1988), the court held that a junior lien holder could assert the doctrine as against a senior lien holder in appropriate circumstances, but refused to apply the doctrine where the senior lien holder would be prejudiced because the common fund was cash and thus more readily available to the senior lien holder. In *First Nat'l Mercantile Bank and Trust Co. v. Hazen*, 96 B.R. 924 (W.D.Mo.1988), the court permitted the trustee to employ marshaling to require a secured creditor to resort first to security in which the trustee had no interest, so as to maximize the possibility that the trustee could realize recovery from the common fund. Here, the debtor as a hypothetical junior lien holder by operation of § 506(a) admittedly has no secured claim on either parcel.

### 3. Section 551

 Even if the debtor could properly invoke the marshaling doctrine, her attempt to employ § 551, while innovative, is contrary to the code. Section 551 preserves value for the estate where a lien is "avoided under section 544" or "void under section 506(d)."

---

**5.** While a party in interest may assert marshaling *in response to* a motion brought by the trustee or debtor in possession, e.g., a motion to sell, an adversary proceeding must be employed where the trustee or debtor in possession seeks to use the marshaling doctrine offensively. *In re San Jacinto Glass Indus., Inc., supra,* 93 B.R. at 936–37; *Matter of Mel–O–Gold, Inc., supra,* 88 B.R. at 207.

**6.** *Center Wholesale* quoted with approval the following passage from Note, *Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine*, 6 Cardozo L.Rev. 671, 688 (1985):

> Marshaling prevents a senior secured party from willfully choosing the double-encumbered fund to the prejudice of junior secured parties. If the senior secured party does not choose the double-encumbered fund, however, there is no reason to think that a bankruptcy court would force the senior secured party to act detrimentally to the junior secured party.

788 F.2d at 544.

Marshaling is not a lien avoidance device, but rather is merely an equitable limitation on the manner in which a senior lien holder may realize upon its security. Even if marshaling could be applied, T & D's mortgage would not thereby be rendered void, as required under § 551, but would simply be satisfied from the foreclosure of one parcel and not the other. The validity of T & D's admittedly oversecured first mortgage lien would in no way be affected. Nor can T & D's lien be avoided under § 544(b), because a creditor holding an unsecured claim could not achieve that result through the marshaling doctrine under Connecticut law. *See Greenwich Trust Co. v. Tyson, supra,* 129 Conn. at 228, 27 A.2d 166; *Bradford Realty Corp. v. Beetz, supra,* 108 Conn. at 30–31, 142 A. 395.

#### 4. Valuation of First Lake's Secured Claim

I disagree with the debtor's assertion that First Lake's claim must be treated as secured only to the extent of $41,592.79 based on a severance of the two parcels and an independent examination of each. First Lake holds a single secured claim, evidenced by a single instrument. The fact that there is more than one item of security for that claim does not entitle the debtor to allocate the security as she pleases and bifurcate the single claim into two claims. *See Mihalko v. Continental Bank and Trust Co. (In re Mihalko),* 87 B.R. 357, 363 (Bankr.E.D.Pa.1988) ("[I]f a ... creditor holds a security interest in two pieces of real property, (both of which are property of the estate), which have a combined value in excess of the creditor's claim, then it is difficult to treat this creditor as undersecured simply because the value of either piece of real estate is less than that creditor's claim.").

Section 506(a) provides that First Lake's claim "is a secured claim to the extent of the value of [its] interest in the estate's interest in such property," i.e., property in which the estate has an interest. That subsection requires an analysis of all estate property in which First Lake holds a security interest. If the first mortgage and the prior governmental liens are paid in full, it is undisputed that the allowed amount of First Lake's secured claim would be $67,988.30. Assuming First Lake does not make a § 1111(b) election and it does not accept the plan, it could prevent confirmation of any plan that would distribute less than that amount in accordance with § 1129, i.e., in deferred cash payments or through the sale of one or both parcels of the property. *See* § 1129(a)(7), (b)(2)(A). First Lake's secured claim is also entitled to adequate protection in the event of any sale of either or both of the parcels. *See* § 363(e). The debtor's argument would result in two separate recoveries for T & D simply because its claim is secured by two parcels.

#### ORDER

IT IS ORDERED that the debtor may not employ the marshaling doctrine in this case;

AND IT IS FURTHER ORDERED that First Lake has an allowed secured claim of $67,988.30 and an allowed unsecured claim of $29,115.50, subject to its right to make a timely election under § 1111(b), *see* Rule 3014 Fed.R.Bankr.P.;

AND IT IS FURTHER ORDERED that no later than August 10, 1995, the debtor shall file a proposed order for relief under § 506(a) and (d) that is consistent with this Memorandum and Order and the form utilized by this court for § 506(a) and (d) orders (Form 506.11, rev. 6/6/95).